2019 IL App (1st) 182526
Nos. 1-18-2526 & 1-19-0015 (Cons.)
September 30, 2019

FIRST DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ALPHONSE IANNONI, | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 18 L 50369 |
| v. | ) | |
| | ) | The Honorable |
| THE CITY OF CHICAGO, | ) | James M. McGing, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

_____

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Griffin and Justice Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    The circuit court held that the entire amount of an arbitrator's award, stated as a weekly amount times a number of weeks, came due when the Illinois Workers' Compensation Commission (Commission) adopted the arbitrator's award. The employer, the City of Chicago (City), paid its injured employee only the weekly amount times the number of weeks that had elapsed by the time of payment. The injured employee filed a section 19(g) petition under the Workers' Compensation Act (Act) (820 ILCS 305/19(g) (West 2016)) in

the circuit court, alleging that all permanent partial disability benefits awarded to employees should be paid in a lump sum, whether they had accrued or not. The trial court entered a judgment awarding the employee the unpaid part of the award plus interest and attorney fees. The City argues on appeal that it paid all amounts due as they accrued, and it intended to pay the remainder of the award monthly, as it accrued. We hold that the City correctly paid its injured employee the amounts awarded as those amounts accrued over time. We reverse the circuit court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        On March 31, 2014, Alphonse Iannoni suffered an injury in the course of his employment with the City. He filed a claim for workers' compensation. The City began paying workers' compensation benefits to Iannoni as the parties proceeded to arbitration.

¶ 4        The arbitrator entered a final decision, dated March 21, 2018, awarding Iannoni both temporary total disability benefits and permanent partial disability benefits. The arbitrator set temporary total disability benefits at $902.67 per week for $149^{3}/_{7}$ weeks, for a total of $134,884.68. The City had already paid $128,694.95, so it owed only $6189.73 for temporary total disability. The arbitrator added, "Petitioner is permanently partially disabled to the extent of 35% loss of use of the person as a whole under Section 8(d)2 of the Act [(820 ILCS 305/8(d)(2) (West 2016))], equivalent to 175 weeks of benefits." The arbitrator awarded "$721.66 per week." Neither party challenged the award. The Commission adopted the arbitrator's award as its final order.

¶ 5        On May 9, 2018, the City sent Iannoni a check for $62,890.49, covering the remaining temporary total disability benefits and more than 70 weeks of permanent partial disability

benefits. The City sent Iannoni a second check in June 2018 for $3135.78, covering a little more than four times the weekly permanent partial disability benefits the arbitrator awarded.

¶ 6        On June 27, 2018, Iannoni filed a complaint against the City, seeking immediate payment of the remainder of the permanent partial disability award, plus interest and attorney fees. The City answered that it had already paid all of the amounts that had accrued as of the date of the complaint. The City chose to pay Iannoni monthly amounts to match the mandatory rate of $721.66 per week, until it paid the entire amount the arbitrator awarded. The City added, "the benefits are processed for the entire upcoming month, even though they have not yet accrued as of the date they are issued. Plaintiff is actually receiving the benefits early." Iannoni replied, "The award can be calculated to the precise penny and Defendant is obligated to pay regardless of whether the Plaintiff is alive or dead. *** [T]he entire award was due and payable, *i.e.* accrued, the moment the Commission's decision became final."

¶ 7        In an order dated October 30, 2018, the circuit court said:

"A permanent disability is immutable. It will not go away. The worker who suffers from a permanent disability is therefore entitled to a lump sum benefit in exchange for the loss of the complete use of their person. This is in sharp contrast to a temporary disability. It makes sense that temporary disability benefits would accrue on an installment basis during the pendency of the disability—the purpose of temporary disability benefits is to compensate the worker during their period of incapacity."

3

¶ 8    The circuit court entered a judgment in favor of Iannoni for the amount of unpaid benefits plus attorney fees of $34,247.50. The court requested supplemental briefs on interest. The City filed a notice of appeal from the October 2018 order.

¶ 9    On December 4, 2018, the circuit court entered a supplemental order awarding Iannoni $3429.77 in interest. Again, the City appealed. We have consolidated the appeals.

¶ 10                                II. ANALYSIS

¶ 11    On appeal, the City argues that paying in monthly installments that cover the mandated rate of $721.66 per week complies with the Commission's order. The City also challenges the award of interest and fees. We review *de novo* the circuit court's interpretation of the Act. *Cassens Transport Co. v. Illinois Industrial Comm'n*, 218 Ill. 2d 519, 524 (2006).

¶ 12    "The underlying purpose of workmen's compensation legislation in this and other States is to provide financial protection in various forms, including the restoration of lost wages, for workers whose earning power is interrupted or terminated as a consequence of injuries arising out of and in the course of their employment." *Board of Education of the City of Chicago v. Industrial Comm'n*, 53 Ill. 2d 167, 171 (1972). "Workers' compensation provides income replacement similar to income continuation" (*Scudella v. Illinois Farmers Insurance Co.*, 174 Ill. App. 3d 245, 250 (1988)), by "provid[ing] a flow of benefits to compensate for lost wages." *Freeman United Coal Mining Co. v. Industrial Comm'n*, 99 Ill. 2d 487, 497 (1984). "[T]he purpose of workers' compensation is to provide injured workers with periodic payments, which are a substitute for regular wages" (*Bailey v. Colonial Freight System, Inc.*, 836 S.W.2d 554, 557 (Tenn. 1992)), and therefore "the ordinary payment of compensation is in installment payments." *Swilling v. Pride Masonry of Gaffney*, 736 S.E.2d 672, 678 (S.C.

4

Ct. App. 2012); see *Lawrence v. Natural Gas Pipeline Co.*, 106 P.2d 685, 687-88 (Kan. 1940). Because the legislature intended workers' compensation payments to substitute for the injured employee's wages, "[l]ump-sum awards are the exception and not the rule." *Bagwell v. Industrial Comm'n*, 94 Ill. 2d 101, 106 (1983).

¶ 13    The legislature expressed its preference for periodic payments. Section 9 of the Act provides:

> "Any employer or employee or beneficiary who shall desire to have such compensation, or any unpaid part thereof, paid in a lump sum, may petition the Commission, asking that such compensation be so paid. If, upon proper notice to the interested parties and a proper showing made before such Commission or any member thereof, it appears to the best interest of the parties that such compensation be so paid, the Commission may order the commutation of the compensation to an equivalent lump sum, which commutation shall be an amount which will equal the total sum of the probable future payments capitalized at their present value ***." 820 ILCS 305/9 (West 2016).

¶ 14    In *Nunn v. Industrial Comm'n*, 138 Ill. App. 3d 143, 146 (1985), the appellate court explained:

> "The rationale for limiting lump sum awards to exceptional circumstances is to safeguard the money and unless it clearly appears that the disabled worker's means of support will increase, a petition for a lump sum settlement should be denied."

The party seeking a lump sum payment bears the burden of showing that such payments will serve the best interests of both parties. *Salisbury v. Illinois Workers' Compensation Comm'n*, 2017 IL App (3d) 160138WC, ¶¶ 16-21.

¶ 15    Iannoni did not ask the arbitrator or the Commission to award a lump sum. He filed no petition under section 9 of the Act. Instead, he claims that the arbitrator awarded a lump sum by awarding him $721.66 per week for 175 weeks. He relies primarily on *Lester v. Industrial Comm'n*, 256 Ill. App. 3d 520 (1993), but that case establishes that the City paid Iannoni correctly.

¶ 16    A work accident led to the amputation of Lester's fingers in October 1988. His employer, Ford, paid him workers' compensation for the amputations about 67 weeks later, in March 1990. In 1991, an arbitrator found that Ford owed Lester compensation for 80 weeks due to the amputations, plus substantial penalties for Ford's unreasonable and vexatious delay of 67 weeks in making the payments. The appellate court affirmed the award of penalties for the delay. The court found:

> "[T]he legislature intended that individuals who receive amputations should be immediately compensated when no dispute exists as to whether the injury arose out of and in the course of employment. Such a result is consistent with the legislature's intent because prompt payment alleviates the possibility that an employee will be faced with unnecessary financial burdens. Requiring immediate payment is not unfair to the employer because statutorily it would have to pay the amount owed at some point in time. It is consistent with the purpose of the Act to require the amount owed to be paid promptly. The employer can pay the amount

owed immediately since section 8(e) clearly sets forth the compensation an employer is obligated to pay. As such, it is unreasonable that an employee should have to wait for a judgment to be entered before receiving the compensation clearly owed." *Lester*, 256 Ill. App. 3d at 523.

¶ 17    In affirming the Commission's calculation of penalties, the court stated:

"The Commission found that Lester was only entitled to penalties on the amount of compensation that had already accrued at the time payment was tendered by Ford. *** Lester contends that once a penalty is imposed for failure to pay a benefit, the penalty is to be calculated on the entire amount of that type of benefit, not just the amount that had accrued prior to payment. *** Here the Commission properly calculated penalties and attorney fees based only on the amount accrued until payment was tendered." *Lester*, 256 Ill. App. 3d at 524.

¶ 18    In *Lester*, the parties could calculate the exact amount Ford would need to pay because of the amputations, yet Ford delayed payment only on the part of the total that had accrued at the time of the tender of payment, about 67 weeks after the injury. Thus, in *Lester*, payments for the amputation accrued over a period of 80 weeks, and the Act required Ford to pay Lester each week the amount set by the statute, as a substitute for his wages, beginning on the date of the amputation.

¶ 19    In accord with *Lester* and the purpose of the Act, the City paid Iannoni temporary total disability benefits, starting well before the arbitrator entered the award. Following arbitration, the City paid the amounts the arbitrator awarded before those amounts came due. If Iannoni seeks to receive the remaining payments in a lump sum, he must file a petition under section

7

9 of the Act, and he will need to present evidence showing that a lump sum payment will serve the best interests of the parties. *Salisbury*, 2017 IL App (3d) 160138WC, ¶¶ 16-21. We reverse the circuit court's order for immediate payment of amounts that had not accrued as of the date of the order. Because the City made timely payments of all amounts due, we reverse the awards of interest and attorney fees. See *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 293-94 (1993).

¶ 20                                   III. CONCLUSION

¶ 21        The Act mandates periodic payment of amounts intended to replace an injured worker's lost wages. The City appropriately paid Iannoni at the start of each month the amount of workers' compensation coming due that month. Because Iannoni filed no petition for a lump sum payment, we reverse the order directing payment of benefits in a lump sum and the order directing payment of interest and attorney fees.

¶ 22        Reversed.

**No. 1-18-2526**

| | |
|---|---|
| **Cite as:** | *Iannoni v. City of Chicago*, 2019 IL App (1st) 182526 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-50369; the Hon. James M. McGing, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey N. Powell, of Hennessy & Roach, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | John W. Powers, of Cullen, Haskins, Nicholson & Menchetti, P.C., of Chicago, for appellee. |